FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 1 3 2009

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

CENTER FOR JUSTICE
BREEAN L. BEGGS WSBA # 20795
JEFFRY FINER, WSBA # 14610
35 West Main, Ste. 300
Spokane, WA 99201
(509) 835-5211
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTATE OF OTTO ZEHM, deceased, and ANN ZEHM, in her personal capacity and as representative of the Estate of Otto Zehm, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SPOKANE, JIM NICKS, KARL THOMPSON, STEVEN BRAUN, ZACK DAHLE, ERIN RALEIGH, DAN TOROK, RON VOELLER, JASON UBERAGA, and THERESA FERGUSON, each in their personal and representative capacities. <br><br> Defendants. | Case No.: CV-09-80-LRS <br><br> COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS <br><br> JURY DEMANDED |

## I.  PARTIES

1.1   Plaintiff ESTATE OF OTTO ZEHM was created on April 17, 2006.  Prior

to his death Otto Zehm was at all times pertinent to this litigation a resident of

COMPLAINT • Page 1

Spokane County. ANN ZEHM was appointed personal representative of the Estate

of Otto Zehm on April 17, 2006, and her appointment was renewed on February

13, 2009.

1.2   Plaintiff ANN ZEHM is and has been at all times pertinent to this litigation

a resident of the State of Washington, residing in the Eastern District of

Washington. Plaintiff ANN ZEHM is the natural mother of Otto Zehm, deceased.

ANN ZEHM brings claims on behalf of the Estate of Otto Zehm and on her own

behalf.

1.3   Defendant CITY OF SPOKANE is a municipality in the State of

Washington and employer/principal of the individuals responsible for determining

custom and policy for its Police Department's use of force and investigations.

1.4   Defendant JIM NICKS, at all times pertinent to this complaint was the

Acting Chief of Police for the City of Spokane and a municipal policy maker. Jim

Nicks is sued in his personal and representative capacity.

1.5   Defendant KARL THOMPSON, at all times pertinent to this complaint

was a law enforcement officer employed by the City of Spokane. Officer

Thompson is sued in his personal and representative capacity.

1.6   Defendant STEVEN BRAUN, at all times pertinent to this complaint was a

law enforcement officer employed by the City of Spokane. Officer Braun is sued in

his personal and representative capacity.

COMPLAINT • Page 2

1.7   Defendant JASON UBERAGA at all times pertinent to this complaint was a law enforcement officer employed by the City of Spokane. Officer Walker is sued in his personal and representative capacities.

1.8   Defendant ZACK DAHLE at all times pertinent to this complaint was a law enforcement officer employed by the City of Spokane. Officer Dahle is sued in his personal and representative capacities

1.9   Defendant ERIN RALEIGH at all times pertinent to this complaint was a law enforcement officer employed by the City of Spokane. Officer Raleigh is sued in her personal and representative capacities.

1.10 Defendant DAN TOROK at all times pertinent to this complaint was a law enforcement officer employed by the City of Spokane. Officer Torok is sued in his personal and representative capacities.

1.11 Defendant RON VOELLER at all times pertinent to this complaint was a law enforcement officer employed by the City of Spokane. Officer Voeller is sued in his personal and representative capacities.

1.12 Defendant THERESA FERGUSON at all times pertinent to this complaint was a law enforcement officer employed by the City of Spokane. Officer Ferguson is sued in her personal and representative capacities.

## II.   JURISDICTION AND VENUE

2.1   All acts complained of occurred in the Eastern District of Washington.

COMPLAINT • Page 3

2.2   Venue is proper in the United States District Court for the Eastern District of Washington.

2.3   Jurisdiction is proper in the United States District Court pursuant to Title 42, United States Code § 1988; Title 28 USC § 1331; and 28 USC § 1343(a)(3).

2.4   This court has personal and subject matter jurisdiction.

**NO SUPPLEMENTAL JURISDICTION**

2.5   In this complaint, Plaintiffs do not request relief for state law claims and do not seek supplemental jurisdiction.

2.6   Solely for the purpose of establishing predicate acts and circumstances in support of their *federal* claims, Plaintiffs reference specific state-law violations where applicable.

**RESERVATION OF RIGHT
TO AMEND FOR STATE-LAW CLAIMS
AND SUPPLEMENTAL JURIDICTION**

2.7   On February, 12, 2009, Plaintiffs presented a non-judicial notice of claim to the City of Spokane alleging solely state-law claims.

2.8   Plaintiffs reserve the right to amend this complaint and include their state-law claims upon the expiration of the 60-day statutory period.

///

///

COMPLAINT • Page 4

**Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211**

# III.   FACTS

**Introduction: SPOKANE POLICE TRAINING & POLICIES**

3.1    Spokane Police are trained to follow the Police Department's rules, regulations, and policies regarding seizure of suspects.

3.2    This training includes the proper use of force against individuals being seized.

3.3    The training requires proportionate responses and prohibits the use of disproportionate force.

3.4    The Spokane Police Department's use of force policy prohibits the use of weapons against passive resistance.

3.5    The Spokane Police Department's use of force policy prohibits the use of deadly force against passive resistance. Deadly force, in part, includes an officer using his or her baton to strike a detainee in the head.

3.6    Spokane Police are also given instruction — as part of their initial and on-going training — regarding the civil rights of individuals detained, seized and arrested.

3.7    Spokane Police are instructed that federal law prohibits police from unreasonable seizures of persons, including the unreasonable use of force to effectuate a seizure.

COMPLAINT • Page 5

3.8     Spokane Police are instructed that an unreasonable seizure of a person

may subject them to civil and criminal liability.

3.9     Spokane Police are instructed that an unreasonable seizure of a person's

private papers, including their confidential medical records, may subject them to

civil and criminal liability.

3.10    The Spokane Police Department employs senior police officers to

conduct internal investigations of incidents involving questionable use of force by

a member of the Department. These officers have additional training in the

methods of investigation appropriate to internal reviews.

3.11    The City of Spokane has agreed to permit investigators from other law

enforcement agencies to investigate use of force incidents involving City of

Spokane Police Department Officers.

3.12    The Spokane Police Department had, at the time of the incidents

described below, written policies and procedures in place to reduce the risk of in-

custody death related to the condition known variously as "excited delirium"

"manic delirium", etc.

3.13    The Spokane Police Department had, at the time of the incidents

described below, written policies and procedures in place to reduce the risk of in-

custody death related to the use of four-point restraints.

**Center For Justice**
**35 W. Main, Suite 300**
**Spokane, WA 99201**
**Telephone:  (509) 835-5211**

## 911 CALL, DISPATCH & POLICE RESPONSE

3.14   On March 18, 2006, two women at an ATM located on North Division, in Spokane, Washington, called 911 to report that they believed an unknown male interrupted their transaction and may have removed money from their ATM account. The 911 operator advised police dispatch who radioed to officers to respond to a suspicious circumstance.

3.15   The 911 caller described the suspect's physical appearance. Based on the copy of the 911 call released by the Spokane Police Department, the caller stated that the suspect was "messing with [the ATM] forever" and "he had like a big wad of something so I think it was money and then he put it in his jacket because when we started driving to see where he was going, uh, he ran."

3.16   The female complainant stated to the 911 operator that her companion believed she had cancelled her ATM transaction.

3.17   The City of Spokane Police Dispatcher, whose identity at this time is unknown, falsely advised responding officers that the complainant thought the suspect "appears to be high."

3.18   The City of Spokane Police Dispatcher erroneously stated that the complainants advised that they had left their card in the ATM machine and that the suspect had their money. The 911 caller's only reference to the ATM card

COMPLAINT • Page 7

**Center For Justice**
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

specifically stated that her companion "has her card" but that they saw a wad in the suspect's hand and "I think it was money."

3.19   At no time did the complainants state that the card was left in the machine.

3.20   At no time did the complainants confirm that money was taken.

3.21   Officer Thompson heard the dispatch broadcasts, knew Officer Braun declared he would respond, and chose to respond to the area ahead of Officer Braun.

3.22   Officer Thompson observed Zehm enter the Zip Trip located at 1721 North N. Division, at approximately 18:25 and 57 seconds as shown on the Zip Trip Surveillance recordings.

3.23   Thompson was able to observe Zehm before Zehm entered the store. Thompson did not note Zehm behaving in a disoriented manner. Thompson did not observe Zehm exhibiting the recognized signs of "excited delirium", that is, Zehm exhibited no hyper-thermic state, nor shed his clothing, nor moved with a staggered gait, nor acted in a manner that showed gross agitation. Thompson had no reason to believe that Zehm was blocking traffic. Thompson had no reason to believe that Zehm posed any threat to himself or others. Thompson had no reason to believe that Zehm was armed with a weapon.

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

3.24    There were no objective signs that Otto Zehm was suffering from "excited delirium" prior to Officer Thompson's engaging Zehm.

3.25    Officer Thompson asked the City of Spokane Police Dispatch whether the complainants confirmed that Zehm had taken money. The City of Spokane Police Dispatch advised Officer Thompson that the 911 complaintants confirmed that Zehm had taken money.

3.26    Based on the 911 and dispatch tapes released by the Spokane Police Department it does not appear that the complaints were asked by the 911 operator to confirm the loss of money or that the complainants ever alleged that their money was in fact taken.

3.27    Within moments of confirming that money was taken, the City of Spokane Police Dispatch Officer alerted Officer Thompson and other responding officers that the complainants were "not entirely certain" that money was taken.

3.28    At the point in time that Officer Thompson stepped into the Zip Trip — at 18:26 and 8 seconds, as shown on the Zip Trip surveillance recording — he had reasonable suspicion that Zehm may have removed money from an ATM that belonged to someone else's account, that the complaining witness believed Zehm was "high" and that he had run from the complaining witnesses after they began following him.

COMPLAINT • Page 9

3.29   Officer Thompson has stated that based on his training and experience and under the circumstances known to him, Officer Thompson did not have probable cause to arrest or seize Zehm when he confronted him in the store.

3.30   Officer Thompson, however, has admitted that he carries his baton in hand or on his duty belt on most of the calls and contacts he has. Officer Thompson considers himself proficient in the use of his baton and admits he has had extensive training in its use, beginning in 1969, with the Los Angeles Police Academy.

3.31   Based on his training and experience and under the circumstances known to him, Officer Thompson believed that had the authority to detain Zehm in order to investigate whether there was a basis to arrest Zehm.

3.32   Officer Thompson also knew that Officer Braun was in the area responding to the same call.  Officer Thompson did not wait for Braun's arrival but entered the store alone.

3.33   As soon as Officer Thompson stepped inside the store he knew that there were a number of customers in the store.

3.34   Based on his training and experience and under the circumstances known to him, Officer Thompson knew that he was to consider the safety of his suspect, the nearby customers, and his own safety in detaining Zehm.

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

3.35   In a later statement, Officer Thompson claimed that his intention on entering the Zip Trip was to handcuff Zehm and detain him while he investigated whether Zehm was subject to arrest.

3.36   Entering the Zip Trip, Officer Thompson knew the store was well lit.

3.37   Officer Thompson identified Zehm and accelerated his pace toward Zehm, drawing his police baton from his left side and passing the baton to his right hand.

3.38   Officer Thompson can be seen to raise his baton over his head in preparation to strike Zehm after Zehm had selected a soda pop in a plastic bottle with his back to the officer.

3.39   Zehm turned around and faced Officer Thompson and Officer Thompson at 18:26 and 12 seconds on the Zip Trip video.

3.40   Officer Thompson has alleged in his reports that when Zehm turned to face him, Zehm was holding a bottle of soda pop.

3.41   Officer Thompson has alleged in his reports that when he saw Zehm's hands, he stopped his advance and ordered Zehm to drop the soda pop.

3.42   According to Officer Thompson, Zehm stated, "Why?."

3.43   Officer Thompson has stated that he issued a second forceful command to drop the soda pop and that Zehm replied, "No."

**Center For Justice**
**35 W. Main, Suite 300**
**Spokane, WA 99201**
**Telephone:  (509) 835-5211**

3.44   Witnesses in the immediate area do not report hearing this alleged exchange and on information and belief Plaintiffs allege that Officer Thompson did not stop in his rush towards Zehm and did not issue two orders to Zehm to drop the soda pop.

3.45   According to Officer Thompson's training — even if Zehm had queried "Why?" and then responded, "No," — a verbal refusal to follow his command is considered passive resistance.

3.46   According to Spokane Police policy and procedure, passive resistance does *not* authorize an officer to use deadly force, nor use a weapon against the passively resisting suspect. At the point Officer Thompson rounded the corner and was in the rear aisle of the Zip Trip facing Zehm the following was known to Officer Thompson:

    a.  Zehm was approximately 15 feet or more away;

    b.  Wearing clothing appropriate to the season;

    c.  in full view;

    d.  in the well-lit Zip Trip convenience store;

    e.  in the presence of a number of customers;

    f.  Officer Braun was responding to the scene;

///

///

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

g.  there was no indication at the time Officer Thompson entered the Zip

Trip and saw Zehm in the southwest corner that Zehm was fleeing or

attempting to leave the scene;

h.  there was no basis to believe that Zehm was armed with a weapon;

nor any information upon which a reasonable officer could conclude

that Zehm posed a safety risk to the public.

## FACTS RELATING TO OFFICER THOMPSON'S PRE-EMPTIVE ASSAULT AND USE OF DEADLY FORCE

3.47    Officer Thompson decided to respond to Zehm's alleged query, "Why" and "No" with a pre-emptive physical attack and use a weapon to strike Zehm to the ground.

3.48    Officer Thompson immediately rushed Zehm intending to strike him with his baton.

3.49    On information and belief, Officer Thompson's purpose, namely to strike Zehm to the ground, was not justified under the circumstances and facts known to the officer but was substantially motivated by a purpose to punish or inflict payback upon Zehm for his saying "Why?" and "No."

3.50    In the alternative, Office Thompson acted with deliberate indifference to Zehm's rights in deciding to strike Zehm to the ground.

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

3.51    Apart from his purpose, Officer Thompson's conduct in deciding to strike Zehm to the ground was done intentionally, wantonly, and without justification.

3.52    Officer Thompson could see that Zehm was observing Officer Thompson rush torwards Zehm with his baton raised.

3.53    Officer Thompson could see Zehm back away.

3.54    Officer Thompson knew that Zehm was not actively resisting, knew that Zehm was not threatening the officer verbally, knew that Zehm was not taking a fighting stance, nor turning to run. Officer Thompson knew that Zehm was backing away from Officer Thompson and from Thompson's brandished baton.

3.55    The attack by Thompson was not in compliance with Department training and written policy regarding the use of weapons against passively resisting suspects. Thompson's baton assault was not a proper response to Zehm's indications of passive resistance under Departmental written policy or the Fourth and/or First Amendments.

3.56    Officer Thompson, by his preemptive and unlawful attack, created the risk that Zehm would lawfully defend himself.

3.57    But for Officer Thompson's preemptive and unlawful attack, Zehm would not have needed to defend himself.

**Center For Justice**
**35 W. Main, Suite 300**
**Spokane, WA 99201**
**Telephone:  (509) 835-5211**

3.58    Officer Thompson knew or should have known that the settled law, called the "danger creation" doctrine, holds officers liable for their unreasonable acts as well as for the natural consequences of those misdeeds.

3.59    As Zehm backpedaled away from Thompson's charge and raised baton, Zehm raised his hands to protect his face and head.

3.60    Zehm never threw the soda pop bottle at Officer Thompson but used the bottle to protect his own face and head from Officer Thompson's attack.

3.61    Officer Thompson struck Zehm's leg with the police baton, intending that the pain of the blow would bring Zehm to the ground.

3.62    A struggle followed during which Officer Thompson deployed his taser against Zehm and struck Zehm with his police baton six or more times in rapid succession.

3.63    Witnesses to Officer Thompson's initial assault against Zehm have stated to investigators that Officer Thompson struck Zehm in the head with his police baton.

3.64    The county medical examiner's findings regarding a wound above Otto Zehm's eye is consistent with a blow from an object the same shape as Officer Thompson's police baton.

///

///

COMPLAINT • Page 15

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

3.65   The county medical examiner's findings regarding a wound under Otto Zehm's scalp do not rule out the cause of that wound arising from a blow by Officer Thompson's police baton.

3.66   Officer Thompson's training forbids the use of baton strikes to the head except when deadly force is justified.

3.67   Officer Thompson's use of deadly force, i.e., striking Otto Zehm in the head with his police baton, was unjustified by the officer's experience and training and under the facts and circumstances known to the officer at the time.

3.68   Zehm reasonably defended himself, struggling to ward off Officer Thompson's baton blows and regain his feet. Zehm's self-defense, lawful under well-established rules governing the limits of legitimate police use of force, merely resulted in Thompson's further escalation of force in retaliation.

**FACTS RELATING TO OFFICERS'
RESTRAINT OF ZEHM**

3.69   At 18:26 and 44 seconds, as shown on the Zip Trip surveillance cameras, Officer Braun entered the store from the south door and joined the struggle, also tasering Zehm. Within minutes of Braun's arrival, Officers Raleigh, Voeller, Uberagua, Dahle and Torok came to the scene and they assisted one another to restrain Zehm's arms behind his back.

3.70   Zehm's legs were restrained as well.

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

Officers attached the leg restraint to the wrist restraint per Spokane Police custom and policy.

3.71    Spokane Police are trained to place detainees in four-point restraint, such as Zehm was in, onto their sides or in a sitting position to reduce the risk of detainees suffering respiratory distress, including death.

3.72    The officers restraining Zehm did not follow their training.

3.73    Spokane Police Department has a policy requiring that detainees in four-point restraint, such as Zehm was in, be placed onto their sides or in a sitting position to reduce the risk of detainees suffering respiratory distress, including death.

3.74    The officers restraining Zehm did not follow the City's policy.

3.75    Contrary to policy, Zehm was positioned onto his stomach for the next 13 of 16 minutes during which time he ceased to struggle. Videos taken from the store's surveillance cameras show that Zehm's feet, though strapped loosely to his wrists, were periodically physically pinned back by an officer who was positioned at Zehm knees, thus increasing the pressure on Zehm's diaphragm.

**FIRE DEPARTMENT CALLED TO SCENE**

3.76    Officers notified the City of Spokane Fire Department that Zehm had been tasered and a team responded to the scene to remove the barbed taser darts

COMPLAINT • Page 17

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

from Zehm's abdomen. The Fire Department team retrieved the darts, and removed themselves from the immediate scene.

3.77   Officers had noted that during their struggle with Zehm he vomited. Officers also noted blood coming from his mouth.

3.78   Defendant Erin Raleigh requested the medical responders to provide a medical mask to cover Zehm's mouth. The Firefighter's notes reflect that the police officer was concerned that Zehm "might" spit and that the mask was to reduce the health risk of pathogens or bites.

3.79   Examination of the uniforms of each officer following the episode did not reveal any residue showing that Zehm spat on an officer.

3.80   In any event, a non-rebreather mask was given to Officer Raleigh, who placed it over Zehm's nose and mouth and secured the mask with straps behind Zehm's head.

3.81   The mask was not connected to oxygen; air was only available through a nickel-sized hole in the mask.

3.82   The hole, however, can be blocked or occluded by clothing or any surface coming into contact with the mask.

3.83   This mask is not designed for use without an oxygen hose connected to it with oxygen flowing, nor for use with the wearer in a prone position.

COMPLAINT • Page 18

3.84    This mask is known to cause wearers, even in a hospital setting with oxygen attached and flowing, to experience a sensation that their breathing is being compromised and mask manufacturers routinely advise medical personnel to reassure patients that the mask, properly used, will permit full breathing.

3.85    This mask is not designed to fully clear carbon dioxide from the space trapped over the subject's nose and mouth if the hole is blocked.

3.86    The use of the non-rebreather mask without oxygen is not part of the training and policy of the Spokane Police Department, nor are members of the Department told that medical responders are trained to use the mask in this fashion.

3.87    Defendant Officers did not seek advice from the Fire Department team on the use of the mask as a spit barrier. One or more of the officers simply directed the Fire Department team to provide the mask.

3.88    No officer on the scene objected to the use of the mask.

3.89    No member of the Fire Department team monitored Zehm after the mask was placed over his nose and mouth.

3.90    While restrained face-down with one or more officers placing their weight on his neck, shoulders, abdomen and hips during his struggle with the officers, Zehm's ability to breath was already compromised.

3.91    His risk for heightened anxiety, suffocation, and/or cardio-pulmonary arrest was increased by the placement of the unconnected non-rebreather mask

COMPLAINT • Page 19

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

over Zehm's face as the mask can, when improperly used, cause carbon dioxide to build up in the volume trapped against the wearer's face, resulting in acidosis or other disorder, and elevating the risk of serious harm or death.

3.92   Zehm ceased breathing while in four-point restraint on his stomach with the non-rebreather mask over his mouth and nose.

3.93   Officers, once they noticed that Zehm had stopped breathing, asked the Fire Department team to return inside the Zip Trip and examine Zehm.

3.94   The Fire Department team was unable to revive him and he was transported by ambulance to the hospital.

3.95   Otto Zehm died at a local hospital on March 20, 2006, at which point in time his organs were recovered for transplantation.

3.96   His temperature at admission to the hospital was not elevated.

3.97   He had no pre-existing heart disease.

3.98   Photos disclose that Zehm had multiple bruises and bone fractures, taser burns, and petechiae inside his eyelids.

3.99   The medical examiner concluded that "it is likely in this case, and in similar cases, that restraint itself placed the decedent at risk for cardio-pulmonary arrest." The examiner ruled that Otto Zehm's death was a homicide because it would have been unlikely but for the prone restraint while in total appendage restraint position.

COMPLAINT • Page 20

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

3.100 Upon completion of the Autopsy Report by the Medical Examiner, the City of Spokane arranged a press conference and Chief Nicks disclosed privileged portions of the Autopsy Report and other privileged and private information to the public.

3.101 Prior to the above disclosure, the City had requested that Plaintiff agree to the entry of a mutual non-disclosure order that would have covered confidential investigatory information in the possession of the police.

3.102 The City and Chief Nicks knew that when this non-disclosure order was signed, prior to the news conference, it created its own set of rights in favor of the Plaintiff in addition to rights established by statute.

3.103 In addition to releasing the privileged and/or confidential information, Chief Nicks or subordinates in the Department's media relations position stated that:

  a. Zehm had lunged at Officer Thompson, and

  b. Zehm had been kept on his side for the majority of the time he was restrained.

3.104 Both statements are false.

3.105 Chief Nicks' false statements placed Zehm in a negative light.

3.106 Chief Nicks made the false statements after having viewed the security camera videotape of Officer Thompson's confrontation with Zehm.

COMPLAINT • Page 21

3.107 Chief Nicks made the false statements knowing them to be false.

3.108 Under Washington Law at the time of Zehm's death, all pre-conviction criminal proceedings were abated *ab initio*.

3.109 A reasonable officer would know that a dead person cannot be charged with a crime.

3.110 Despite Zehm's death, Officer Ferguson, acting under color of state law, presented a sworn affidavit to a local magistrate requesting access to confidential medical and employment records for the alleged purpose of investigating the crime of third degree assault of a police officer.

3.111 A reasonably well-trained officer would know, and Officer Ferguson — upon information and belief — did know that the warrant authorizing her seizure of Zehm's private medical and employment papers was based on a wholly invalid affidavit.

3.112 A reasonably well-trained officer would know, and Officer Ferguson did know that her acquisition of private papers without proper authority was unreasonable under federal and state law and an invasion of privacy.

3.113 Upon belief, the above invasion of privacy was substantially and/or causally motivated in order to pre-emptively prepare against Zehm's estate for his in-custody death and in retaliation for exercise of federal rights.

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

**FACTS RELATING TO RATIFICATION BY CITY**

3.114 The City of Spokane, through its Mayors and Police Chiefs, has, over the past 2 years and 11 months, ratified the misconduct of the Defendants Officers, agents and Defendant Chief Nicks.

3.115 The City of Spokane has publicly defended the individual officers' and the Chief's violations of federal and state law and Departmental policies.

3.116 The City of Spokane has publicly defended the individual officers' and the Chief's conduct that led to the deprivation of Otto Zehm's and his mother's civil rights.

3.117 Where actions taken by the individual defendants in violating civil rights were taken in accordance with the City's policies and procedures, the City is liable for the actions of their agents — the individual Officers and the Chief — in depriving Otto Zehm's and his mother of the federal  civil rights.

3.118 Where actions taken by individual officers, agents and Chief Nicks leading to the deprivation of Otto Zehm's and his mother's civil rights were taken contrary to written policies and procedures, the City has ratified all such conduct and is liable.

///

///

///

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

**FACTS RELATING TO CONSPIRACY**

3.119  Tacitly or otherwise, one or more of the Defendants entered into an agreement to violate Plaintiffs' civil rights and commited an overt act in furtherance of that agreement.

3.120  Initial police statements, including releases by both subordinates on behalf of the Department and by acting Chief of Police Nicks, falsely portrayed Otto Zehm as the aggressor. On multiple occasions officials for the Police stated that Otto Zehm "lunged" at Officer Thompson, causing Thompson to justifiably strike Zehm his with his baton.

3.121  Review of the surveillance video tape shows that Zehm never moved toward Officer Thompson. Zehm's movement was plainly a retreat from the onrushing baton-brandishing officer.

3.122  Evidence from the scene included the non-rebreather mask placed over Otto Zehm's mouth and nose.

3.123  No officer at the scene, nor senior officer reviewing Zehm's death, advised the medical examiner that the non-rebreather mask was used.

3.124  The non-rebreather mask was not provided to the medical examiner for her first review.

///

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

3.125 Until the issue of the non-rebreather mask was raised by third parties, the City, its Chief of Police, investigators, and the officers on the scene took no steps to preserve the mask.

3.126 At least one internal interview of Officer Thompson was conducted off the record. Following the initial interview Officer Thompson was interviewed by Officer Ferguson on tape and lead through a series of questions oriented toward exonerating his conduct.

3.127 Officer Ferguson prepared and submitted a facially invalid affidavit seeking personal and privileged information for the purpose of investigating a dead person for an unprosecutable crime.

**FACTS RELATING TO DAMAGES**

3.128 As a proximate cause of the Officers deprivation of Otto Zehm's federal civil rights, Otto Zehm suffered substantial general damages in anticipation of death, including pain and suffering in an amount to be proven at trial

3.129 As a proximate cause of Officers deprivation of Otto Zehm's federal civil rights, his Estate suffered a loss of earnings in an amount to be proven at trial.

3.130 As a proximate cause of Officers deprivation of Otto Zehm's federal civil rights, his Estate incurred medical and funeral expenses in an amount to be proven at trial

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

3.131 Officers deprived Otto Zehm's and Ann Zehm's federal civil rights with deliberate disregard of the rights of Otto Zehm and his family or for the purpose of harming Plaintiffs without legal justification.

3.132 Accordingly, under the Fourteenth Amendment's due process clause, Ann Zehm has suffered general damages related to the interference in the parent child relationship, invasions of privacy in her son's records, release of confidential information to the public and false allegations regarding her son and his death in an amount to be proven at trial.

**FACTS RELATING TO OTTO ZEHM AND ANN ZEHM**

3.133 Otto Zehm was a gainfully employed, single male at the time of his death, aged 36.

3.134 He was a financial provider for his disabled aged mother, Ann Zehm, to whom he regularly contributed some of his earnings in the form of cash or specific goods.

3.135 Other than his mental illness, Zehm was in good health.

3.136 Otto provided significant emotional support and enjoyment to his mother in addition to financial support.

3.137 Co-workers and supervisors, as well as the medical personnel who knew him, all relate that Otto Zehm was a sincere almost painfully shy individual whose

**Center For Justice**
**35 W. Main, Suite 300**
**Spokane, WA 99201**
**Telephone: (509) 835-5211**

manner was submissive and never physically aggressive. When not taking his

medications, Zehm retreated further into his shyness.

## FEDERAL CLAIMS FOR RELIEF

**Violations of Title 42, United States Code § 1983**

4.1     Defendants' conduct constitutes the deprivation of Otto Zehm's

federally protected rights under color of law, i.e., unreasonable seizure,

deadly force, and in-custody homicide of Otto Zehm in violation of the

Fourth Amendment to the Constitution of the United States.  As a result of

this conduct Defendants caused Otto Zehm to experience fear, great physical

pain during his struggle with police, and ultimately loss of his life. This claim

is made on behalf of the Estate of Otto Zehm.

4.2     Defendants' conduct constitutes a conspiracy to deprive Otto Zehm

of his federally protected rights under color of law, i.e., a plan or agreement

between more than one person to violate Otto Zehm and Ann Zehm's civil

rights, with at least one overt act in furtherance of that plan. .  As a result of

this conduct Defendants caused Otto Zehm to experience fear, great physical

pain during his struggle with police, and ultimately loss of his life. This claim

is made on behalf of the Estate of Otto Zehm.

4.3     Defendants' conduct constitutes a deprivation of federally protected

rights under color of law, i.e., unreasonable seizure, deadly force, and resulting

Center For Justice
35 W. Main, Suite 300
Spokane, WA 99201
Telephone:  (509) 835-5211

in-custody homicide of Otto Zehm in violation of the Fourth Amendment to the Constitution of the United States. As a result of this conduct, Defendants caused Plaintiff Ann Zehm to suffer the loss of financial and emotional support and association of her son Otto Zehm. This claim is made on behalf of Ann Zehm under the Fourteenth Amendment's due process clause.

4.4    Defendants' conduct deprived Otto Zehm and his Estate of federal constitutional and statutory privacy rights regarding his medical condition and treatment.

4.5    Defendants deprived Otto Zehm, his Estate, and his mother important property/privacy interests secured by state law regarding confidential employment, medical, autopsy and police investigatory records without due process of law secured by the Fourteenth Amendment.

4.6    All of Defendants actions deprived Otto Zehm, his estate, and his mother of their rights to liberty, privacy, the right to petition for governmental redress of grievances and due process were made either intentionally, recklessly and/or with deliberate indifference subjecting defendants to liability under 42 USC § 1983 and/or § 1985.

4.7    Defendants' actions in depriving or seeking to interfere with the rights set forth in Paragraphs 4.1 through 4.6 were substantially motivated and/or caused by

COMPLAINT • Page 28

Defendants' retaliatory motives that sought to punish or chill the exercise of said rights by Plaintiff Otto Zehm and/or his mother Ann Zehm.

4.8     Defendants' actions in violating the federal civil rights set forth in Paragraphs 4.1 through 4.6 were done intentionally, maliciously, wantonly, oppressively, and/or with reckless indifference subjecting the non-municipal defendants to liability for punitive damages in an amount to be proven at trial.

4.9     Defendants acted with a common purpose with knowledge of what they were each doing and contributed to legal injuries that are often difficult to divide and Defendants are therefore jointly and severally liable for all remedies except for punitive damages.

///

///

///

///

///

///

///

///

///

**Center For Justice**
**35 W. Main, Suite 300**
**Spokane, WA 99201**
**Telephone:  (509) 835-5211**

# PRAYER FOR RELIEF

Plaintiffs respectfully demands a jury trial on all issues and further, that

Plaintiffs be awarded:

5.1  Economic and non-economic damages in an amount to be proven at trial;

5.2  Punitive damages to the extent authorized by law in an amount to be

proven at trial;

5.3  Plaintiffs' reasonable attorneys fees and costs, pursuant to 42 USC § 1988,

or as otherwise provided by law.

5.4  For such other and further relief as the court deems just and equitable.

DATED this 13th day of March, 2009.

s/Jeffry K. Finer

Jeffry K. Finer, WSBA #14610
Breean L. Beggs WSBA #20795
CENTER FOR JUSTICE
35 W. Main Ave. Ste. #300
Spokane, WA 99201
Telephone:  (509) 835-5211
Attorneys for Plaintiffs

COMPLAINT • Page 30